UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM JUSTIN BREWSTER | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 3:08-cv-250 |
| | ) | *Phillips* |
| | ) | |
| HOWARD CARLTON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by

petitioner William Justin Brewster ("Brewster").  The matter is before the court on the

motion to dismiss filed by the Tennessee Attorney General on behalf of the respondent.  For

the following reasons, the motion to dismiss will be **GRANTED**, the petition for the writ of

habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**.

I.      Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases In The United States

District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Brewster is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.    Factual Background

The respondent has provided the court with copies of the relevant documents as to Brewster's direct appeal and post-conviction proceedings. [Court File No. 8, Notice of Filing Documents, Addenda 1-24]. Brewster, along with his wife, Carrie Ann Brewster, was convicted by a jury, in the Circuit Court of Knox County, Tennessee, of first degree felony murder, facilitation of first degree premeditated murder, especially aggravated robbery, and especially aggravated burglary. The convictions were affirmed on direct appeal, with the exception that the especially aggravated burglary conviction was modified to aggravated burglary. *State v. Brewster*, No. E2004-00533-CCA-R3-CD, 2005 WL 762604 (Tenn. Crim. App. April 5, 2005), *perm. app. denied, id.* (Tenn. Aug. 22, 2005) [Addendum 16].

On direct appeal, Brewster challenged the sufficiency of the evidence against him and the trial court's failure to suppress his pretrial statement. The Tennessee Court of Criminal Appeals summarized the evidence against the Brewsters as follows:

2

At approximately ten o'clock on the evening of June 19, 2002, Michael Atteberry heard two gunshots at the residence of his neighbor, Bobby David Ervin, the victim. Mr. Atteberry saw a slender Caucasian male run out of the victim's house to a red Nissan truck, and a few seconds later, Mr. Atteberry heard three more gunshots. Then, a second person, Caucasian and heavier in build than the first person, ran from the house to the truck. The truck left with dispatch but not hastily. Mr. Atteberry called the police.

When police officers arrived, they found the body of the victim in a recliner chair in the living room. The victim had been beaten with a blunt object, stabbed numerous times with a sharp object, and shot three times with a .357 gun.

The officers found approximately $13,000 in cash in the victim's pants pockets. Behind the recliner, they found two handguns and a large quantity of marijuana and cocaine. The house was unkempt and in disarray; at trial, the parties differed about whether the house had been ransacked. The defendants maintained that the disarray was merely the result of the victim's customary untidiness. A blood smudge was found inside a dresser drawer in the master bedroom, and the locked door to a second bedroom had been kicked in by someone wearing shoes that apparently had tracked through the blood in the living room.

The officers' investigation caused them to look for the husband-and-wife defendants, Carrie Ann Brewster and William Justin Brewster.[1] A detective left his number with JB's mother. Several hours later, a weeping CB called the detective and said, "You're not going to believe me; you're not going to believe me that I killed that man in self-defense." The detective suggested that CB and JB come to the police station.

> [1] To facilitate distinguishing between the defendants in this opinion, we will refer to William Justin Brewster as "JB" and to Carrie Ann Brewster as "CB."

The defendants arrived at the station in their automobile. The officers interviewed them separately, beginning with CB. She signed a written waiver of her *Miranda* rights and gave a tape-recorded statement in which she stated that she and JB had killed the victim. Likewise, after also waiving his *Miranda* rights, JB confessed that he and CB had killed the victim.[2] He admitted that he took $150, a handgun, and some pills from the victim's home. The defendants told the officers that they could find the handgun used in the homicide beneath

3

the front seat in the defendants' car. The officers retrieved the .357 revolver, which through forensic analysis proved to be the gun that fired bullets into the victim's neck, chest, and arm. In his pretrial statement, JB admitted that he had obtained the revolver from the rear bedroom in the victim's house.

> [2] Before trial, the defendants requested a joint trial, and each defendant executed a waiver of the right-to-confrontation interests protected by *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The trial court conducted an intensive, thorough *voir dire* of each defendant and determined that each waiver was competently and voluntarily made.

> Based upon the foregoing evidence, the jury convicted each defendant of felony first degree murder, facilitation of first degree premeditated murder, especially aggravated robbery, and especially aggravated burglary. The trial court merged each verdict of guilty of facilitation of first degree premeditated murder with the respective verdict of first degree felony murder. Each defendant received a life sentence for the felony murder conviction and 25-year and 12-year Department of Correction sentences, respectively, for the especially aggravated robbery and especially aggravated burglary convictions.

*State v. Brewster*, 2005 WL 762604 at **1-2 (footnotes omitted). The appellate court concluded the evidence was sufficient to support the convictions, *id*. at *3, and that the trial court correctly denied the motion to suppress Brewster's pretrial statement, *id*. at *7.

Brewster then filed a petition for post-conviction relief, in which he asserted various claims of ineffective assistance of counsel. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Brewster v. State*, No. E2007-00605-CCA-R3-PC, 2008 WL 465268 (Tenn. Crim. App. February 21, 2008) [Addendum 22].

In support of his petition for the writ of habeas corpus, Brewster alleges numerous instances of ineffective assistance of counsel; he also alleges that by admitting his confession, the trial court denied Brewster the right to a fair trial and due process. The respondent contends he is entitled to judgment as a matter of law based on procedural default with respect to many of Brewster's claims of ineffective assistance of counsel, and judgment as a matter of law based upon the findings of the Tennessee state courts as to the remaining claims.

III.  Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Brewster cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

6

Brewster alleges the following instances of ineffective assistance of counsel, as set forth in the habeas petition itself and the supporting memorandum of law[1]: (1) failed to form a meaningful and close working relationship with Brewster; (2) failed to communicate evidence against Brewster; (3) failed to inform Brewster of the pros and cons of a joint trial; (4) failed to investigate mitigating evidence; (5) failed to present a defense; (6) failed to file a motion for severance; and (7) failed to present a defense of duress or diminished capacity. Brewster also alleges that counsel's errors, when considered in the aggregate, rendered his trial fundamentally unfair.

The court has reviewed the entire record of this case, including Brewster's brief to the Tennessee Court of Criminal Appeals on direct appeal of his conviction and his appellate brief on appeal from denial of post-conviction relief. On direct appeal, Brewster challenged the trial court's failure to suppress his pretrial statement; he did not raise any claim of ineffective assistance of counsel on direct appeal of his conviction. [Addendum 13, Brief of Appellant].

In his initial *pro se* petition for post-conviction relief, Brewster simply alleged ineffective assistance of counsel as a ground for relief. [Addendum 18, Technical Record of Post-Conviction Proceedings, p.1, Petition for Relief from Conviction or Sentence at 6].

---

[1]In addition to the claims of ineffective assistance of counsel set forth in the habeas corpus petition, Brewster also submitted to the court a memorandum of law in support of the habeas petition which contains additional claims of ineffective assistance of counsel. In reviewing this matter, it has come to the court's attention that the supporting memorandum of law was never filed in the court's electronic case filing (ECF) system and thus was not made a part of the record of the case. The Clerk is **DIRECTED** to file the memorandum of law in ECF and to serve counsel for respondent with the memorandum of law through the ECF system.

In a subsequent post-conviction petition filed by counsel, Brewster alleged that his right to effective assistance of counsel was violated based upon the pervasive and divisive conflicts between Brewster and his attorney, which led to an inadequate defense, and that counsel failed to present a theory of self-defense to the jury and failed to preserve meritorious issues for appellate review. [*Id*., p. 35, Petition for Post-Conviction Relief at 3].

On appeal from the denial of post-conviction relief, however, Brewster only raised the following claim of ineffective assistance of counsel:

> Did the trial court commit legal error in refusing to grant post-conviction relief when it ruled that the convictions in this case were not void or voidable based on a violation of the civil rights of Petitioner-Appellant due to pervasive and divisive conflicts with trial counsel or based on trial counsel's failure to consult with Petitioner-Appellant on trial or appellate issues and defenses?

[Addendum 20, Brief of Appellant, p. 1, Issue Presented For Review].

With the exception of his claim that his attorney failed to form a meaningful and close working relationship with him, Brewster has procedurally defaulted his claims of ineffective assistance of counsel. Accordingly, the court will consider on the merits only Brewster's claim that the trial court erred in denying the motion to suppress and his claim that counsel failed to form a meaningful and close working relationship with Brewster. With respect to those claims, the respondent contends he is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

8

IV.  State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Brewster may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court.  In addition, findings of fact by a state court are presumed correct and Brewster must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  Brewster has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at 413.  A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable."  *Id*. at 409.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the court will consider Brewster's remaining claims for relief.

V.   Discussion of Claims on the Merits

*A. Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984) the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Brewster must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

10

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

In considering Brewster's claim of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals first noted that "[i]n his appellate brief, the Appellant's argument focuses entirely upon his assertion that trial counsel's 'failures in his approach in communicating with Brewster created conflicts between the two men that were so pervasive and divisive that Brewster's right to the effective assistance of counsel must be presumed to have been violated.'" *Brewster v. State*, 2008 WL 465268 at *2. The appellate court then noted that *Strickland v. Washington* established the standard for evaluating such claims. *Id*. at **2-3.

The court summarized the evidence at the post-conviction evidentiary hearing, and the findings of the trial court, as follows:

> At the post-conviction evidentiary hearing, the Appellant testified that trial counsel was appointed approximately one year prior to trial and that he met with counsel once or twice up until two weeks before trial, when they met almost every day to work on trial strategy and proof. He recalled that trial counsel employed an investigator and an "apprentice" in preparing for the case. The Appellant testified that during his discussions with counsel, he felt that his own input regarding the case was not being considered.[1] For example, the Appellant testified that he wanted to present a self-defense argument at trial, but this option "was just shot out the window" because of his statement to the police, and that "there was no ... preparation to come in here and plead self-defense." He testified that trial counsel told him "there was ... only one

11

defense in this case" and that he "pretty much sat back and let [his] lawyer drive, as far as that went." The Appellant further stated that "it was decided" that he, rather than his separately represented co-defendant wife, would take the stand at their joint trial, however, he later decided not to testify. He testified that, in hindsight, he believed he would have been better off if his case had been severed from that of his wife. The Appellant further stated that after he was convicted, he never met with trial counsel to discuss issues to be pursued on direct appeal.

> [1]The Appellant also testified that he had been "doped out of [his] mind" when he confessed to felony murder, presumably attributing the admission of his confession into evidence to some unspecified error of trial counsel. However, the record reflects that trial counsel moved, unsuccessfully, to suppress the Appellant's statements to police, and, further, the Appellant acknowledged that the issue of voluntariness of his confession was raised before this court by counsel on direct appeal. In that opinion, we concluded that the record supported the trial court's determination that the Appellant gave a knowing and voluntary statement to police. *State v. Carrie Ann Brewster and William Justin Brewster*, No. E2004-00533-CCA-R3-CD. As the Appellant has failed to establish either deficient performance or prejudice as to this issue, and, further, as it has been previously determined, *see* T.C.A. § 40-30-106(f), we conclude that it is without merit.

On cross-examination, the Appellant was questioned regarding a purported self-defense strategy. He stated that he intended to explain to the jury that the victim "got a hold of [the Appellant's] wife" and that he had been defending her. The Appellant admitted that he had the opportunity to testify at trial, and that trial counsel, his co-defendant wife, and his mother had encouraged him to testify, but he had ultimately chosen not to do so. The Appellant agreed that any chance he had of convincing the jury that he acted to protect his wife or himself was lost when he decided not to testify at trial. The Appellant further stated that he never asked the trial court to discharge his attorney and that he "felt confident" with trial counsel. When asked about counsel's representation on appeal, the Appellant stated that he did not know what appellate issues that he would have raised that were not pursued by counsel but that he "would have liked to have sat and discussed it."

At the evidentiary hearing, trial counsel testified that he represented the Appellant at trial and on appeal. He testified that he believed that the Appellant and his wife would be tried separately but that the Appellant had been adamant

about them going to trial together. Trial counsel stated that he did not think he had ever seen as compelling a case for felony murder noting the confessions of the Appellant and his wife to police, which he did not believe would be suppressed,[2] as well as tangible evidence held by the State, including the gun and bloodstained money. He testified that he explained to the Appellant "that his confessions don't amount to self-defense" and that "[s]elf defense is something you have to put on proof for" and that "[s]omebody had to testify." He testified that another problem with the defense related to the Appellant's wife, whom her own attorney, trial counsel, and the parties agreed could not be called as a witness based upon her performance at a preliminary hearing where he recalled her being "just about the worst witness [he had] ever seen ."[3] Trial counsel described the defense strategy as attempting to establish that the Appellant and his wife lied in their confessions. He explained that he prepared his entire trial strategy around the fact that the Appellant would testify. He stated that the only conflict he remembered having with the Appellant was on the last day of trial, when the Appellant informed him that he did not wish to testify. Trial counsel further testified that he could not recall discussing any specific issues with the Appellant after trial, but that he subsequently prepared the appellate brief for direct appeal in which he challenged the sufficiency of the evidence and the admission of the Appellant's confession.

[2]Again, we note that despite his opinion, trial counsel filed a motion to suppress the statement of the Appellant, which was in fact unsuccessful.

[3]Trial counsel stated that the Appellant's wife had demonstrated that "she was easily riled" and "she had come after [Assistant District Attorney] Nassios at the suppression hearing." Furthermore, he believed that she would perjure herself if called as a witness.

In the order denying post-conviction relief, the court specifically found that the Appellant and his wife had both waived their right to be tried separately in writing after extensive conversations with the court prior to trial. Additionally, the post-conviction court found that, after the Appellant notified counsel of his decision not to testify, the two had a heated exchange about the need for the Appellant to testify. The court further found that the Appellant understood his rights pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn.1999), and freely made his own choice not to testify. The post-conviction court further noted that the Appellant had been hesitant to take the stand at the post-conviction hearing as well. With regard to trial counsel's challenge in

preparing a defense, the post-conviction court noted that counsel was confronted with the Appellant's statement admitting "that he got his baseball bat at the time of the offense and that his wife and he beat the victim with the baseball bat as well as shot and stabbed the victim." The record clearly preponderates in favor of these findings. After discussing in detail the Appellant's testimony at the evidentiary hearing, the post-conviction court found that the Appellant "felt like the case was one sided and that he want[ed] another chance because in retrospect he believe[d] that [he] made poor decisions." We agree with this characterization of the Appellant's testimony.

The post-conviction court found that trial counsel "prepared his entire trial based upon [the Appellant]'s testimony and they had no conflicts regarding trial strategy." The court accredited trial counsel's testimony that he was thoroughly prepared for trial. Specifically, the court found as follows:

> [Trial counsel] took what he had, worked hard, created whatever defense he could, filed motions of suppression knowing that he would not achieve the results that [the Appellant] wanted, but knowing that he needed to do so, and knowing that the outcome of the trial would not be any different to the felony murder aspects of the trial, [and] fulfilled all of his obligations as counsel to [the Appellant] in an appropriate manner.

The record does not preponderate against these findings.

*Id*. at **3-5. The Tennessee Court of Criminal Appeals then agreed with the trial court that Brewster had "not established deficient performance or prejudice with regard to counsel's representation at trial and on appeal. Accordingly, we conclude that the post-conviction court correctly denied the Appellant's petition for post-conviction relief." *Id*. at *5.

This court has reviewed the record of Brewster's post-conviction proceedings. [Addendum 18, Technical Record of Post-Conviction Proceedings; Addendum 19, Transcript of the Evidence]. The summary of the evidentiary hearing by the Tennessee Court of Criminal Appeals is supported in the record. In addition, the trial court's findings and

conclusions were correctly summarized by the appellate court and are supported in the record.

Brewster's attorney, Bruce Poston, testified at the evidentiary hearing that he had never seen a stronger case for felony murder. [Addendum 19, Transcript of the Evidence, pp. 39-40]. Mr. Poston further testified that his entire trial strategy was prepared around the fact that Brewster would testify; the only conflict that Mr. Poston had with Brewster was when Brewster told Mr. Poston, on the last day of trial, that he would not testify. [*Id*. at 44-46].

Brewster's defense, as set forth in Mr. Poston's opening statement to the jury during the case in chief, was that Brewster lied in his confession when he stated that he went to the victim's house to rob him. Brewster, in fact, was a drug addict who purchased his pills from the victim and was indebted to the victim for the pills, and who generally spent all the family's money on drugs; Brewster and his wife initially went to the victim's house that night to ask for more time to repay the money Brewster owed him, but then in a state of emotion and panic decided instead to kill the victim, end his evil influence over Brewster, and thus reclaim their lives. [Addendum 4, Transcript of the Evidence, vol. I, opening statements of Mr. Poston, pp. 91-100]. That defense was lost when Brewster refused to testify.

Based upon the foregoing, this court concludes that the state courts' determinations that Brewster received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*.

## B. Trial Court Error / Denial of Motion to Suppress Confession

In a statement given to police without the presence of counsel, Brewster confessed that he and his wife went to the victim's house to rob him, but the plan did not go right and they ended up killing the victim, as well as taking money and drugs. [Addendum 24, Transcript of police interview of William Justin Brewster on June 22, 2002, pp. 63-90]. Brewster filed a pre-trial motion to suppress his statement, which the trial court denied after a hearing on the motion. He now claims that the trial court erred in denying the motion to suppress.

The Tennessee Court of Criminal Appeals considered and rejected this claim. In doing so, the appellate court summarized the evidence at the suppression hearing and the trial court's conclusion as follow:

> The defendants moved the trial court to suppress the inculpatory statements they separately gave to Knoxville Police Department Major Crimes Detective A.J. Loeffler. Each defendant claims that the statement was made unknowingly and involuntarily. The trial court conducted a pretrial evidentiary hearing. Detective Loeffler testified that CB called him and tearfully admitted that she had killed the victim in self-defense. Detective Loeffler asked that CB and JB come to the police station.

> When they arrived, Detective Loeffler and another officer interviewed them separately. Detective Loeffler testified that CB was distraught and crying. He testified that he read to CB the litany of Miranda rights and that she waived them in writing. He testified that, although she was upset, CB did not appear to be under the influence of any alcohol or drugs and was intelligent and responsive. He testified that he did not force or coerce her to give a statement and made no promises in exchange for a statement. In particular, he denied that CB requested an attorney. He agreed that he told CB that she should think of her children when assessing whether to tell the truth about the homicide.

16

Detective Loeffler testified that, when JB came into the interview room, he seemed "groggy" and "thick-tongued." The detective concluded, however, that although JB had admitted taking Xanax several hours earlier, he was mentally aware and responsive. Detective Loeffler testified that he read the *Miranda* litany to JB, that JB signed a written waiver, and that JB appeared to understand the questions and did not "doze off." The detective testified that although JB was upset and cried, he was not coerced in any way.

CB testified at the suppression hearing that when she called the police station to reach Detective Loeffler, a female at the station told her over the phone that the defendants "had an hour to get [themselves] up here or-something to the effect that your kids are gone. Or you'll lose your kids." CB testified that she panicked at this threat, and she started driving herself and JB to Knoxville from their mobile home in Dandridge. She testified that during the trip, JB ingested hydrocodone and Valium pills from a bottle. She testified that she wished to have an attorney present, and when they arrived at the police station, she asked Detective Loeffler how long it would take to get any attorney there. When he responded that it would take 72 hours, she and JB agreed to be interviewed without an attorney. She admitted that, during the interview, the detective asked her if she wanted an attorney, and she responded, "No."

She testified that she had never before been arrested and was unfamiliar with police procedures. She stated that Detective Loeffler facilitated her making inculpating statements by denigrating the victim, affirming the victim's history of drug dealing and violence, and expressing empathy for the defendants' feeling threatened by the victim and the victim's family. She admitted in the suppression hearing that some of her pretrial statement was untrue.

She testified that during the interview, she felt she was not free to leave. She was not told that she could leave, the door to the room was closed, and the officers had declined at one point to let her go out to smoke a cigarette.

CB testified in the hearing that on the night the statements were given, JB, who was a "pill head," was "too out of it" to give a statement.

JB did not testify at the suppression hearing. He submitted exemplars of his signature which, he maintained, varied significantly in clarity from his signature on the *Miranda* waiver form.

The trial court denied both motions to suppress. The judge commented that the defendants both came into the police station voluntarily "for whatever reasons brought them in." She observed, "[CB] may have come in out of fear that her children might be taken away[,] but she came in to deal with the issue and did it voluntarily." The trial judge discerned nothing wrong with the interrogation and characterized it as free of badgering and coercion. Although the judge agreed with Detective Loeffler after listening to the tape of JB's statement that JB's voice sounded "somewhat slurred," she had never heard JB's normal voice. She did compare his waiver signature with the signature exemplars but found the latter to be only "a little different from the waiver." The judge stated that the record failed to articulate what kind of, or how many, pills JB had taken. The court found that, despite JB's slurred speech, "it is clear that ... he understood [the] questions[,] ... that he answered those questions and ... he clarified many times." Significantly, the judge thought, JB was able to repeat the faux explanation for the homicide that CB had "made up." In sum, the judge determined that JB made "a free, knowing, voluntary and understood statement."

*State v. Brewster*, 2005 WL 762604 at **4-5.

This court has reviewed the transcript of Brewster's suppression hearing. [Addendum 3, Transcript of Hearing on Motion to Suppress, pp. 3-151]. The summary of the evidentiary hearing by the Tennessee Court of Criminal Appeals is supported in the record. In addition, the trial court's findings and conclusions were correctly summarized by the appellate court and are supported in the record.

The Tennessee Court of Criminal Appeals concluded that the trial court did not err in denying Brewster's motion to suppress his statement.

In the present case, the evidence does not preponderate against the trial court's findings of fact that resulted in a denial of the motions to suppress. The defendants' waivers and their tape-recorded statements support the trial court's findings that the defendants acted voluntarily and free of coercion when they essentially confessed to killing the victim and asporting with some of his property....

18

As noted by the trial judge, JB's voice in the tape-recorded interview sounds slurred. However, as also noted by the trial judge, the record contains no basis for a court's determining whether the defendant's voice on the tape is substantially different from his normal speaking voice. JB did not testify in the suppression hearing, and we are at a loss to discern in the record that he was drug-impaired or otherwise limited at the time he signed the Miranda waiver and gave the approximately two-hour long statement. JB's replies to the detectives' questions were generally responsive, meaningful, and lucid. All in all, the record supports the trial court's determination that JB gave a knowing and voluntary statement

2005 WL 762604 at **6-7.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). A confession is considered involuntary if 1) the police extorted the confession by means of coercive activity, 2) the coercion in question was sufficient to overbear the will of the accused, and 3) the will of the accused was in fact overborne because of the coercive police activity in question. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988). To determine whether an accuser's confession is involuntary, a totality-of-the-circumstances test is employed. *Withrow v. Williams*, 507 U.S. 680, 688-89. Factors to weigh include the age, education, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *See Arizona v. Fulminante*, 499 U.S. 279, 286 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The ultimate inquiry in determining whether a confession is voluntary is whether it comports with the requirements of the Fourteenth Amendment's Due Process Clause. *Miller v. Fenton*, 474 U.S. 104, 110 (1985).

This court concludes that the determination, by the Tennessee Court of Criminal Appeals, that Brewster's statement was knowing and voluntary was neither contrary to, nor did it involve an unreasonable application, of federal law. There is nothing in the record to suggest that Brewster's will was overborne by coercive actions on the part of the investigating officers; Brewster was not threatened nor mistreated. Although the trial court found that Brewster's voice sounded slurred, the trial judge also found that Brewster understood and answered the questions put to him. The appellate court determined, and this court agrees, that Brewster's replies were lucid and responsive, and his statement was knowing and voluntary.

VI.   Conclusion

The respondent's motion to dismiss will be **GRANTED**, the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Brewster having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The court will further **DENY** Brewster leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

_____s/ Thomas W. Phillips_____
United States District Judge